HIPPEE v. POND *et al.*

77 235
85 550
77 235
111 175

1. **Agency:** PAYMENT OF NOTE TO ABSCONDING AGENT : WHOSE LOSS. P. procured C., as her agent to negotiate a loan of H., which was secured by a mortgage on land. P. paid installments of interest to C., and afterwards sold the land to J., who did the same,—he having assumed the mortgage,—and C. forwarded the interest to H. When the loan was due J. applied to C. to procure an extension of the loan for two years, and paid C. for his services. H., however, was unwilling to grant an extension. Afterwards, believing that J. was ready to pay the loan, C. paid the amount of the note with his own money, and procured a satisfaction piece, which was never recorded, but afterwards found that J. was not ready to pay, and still wanted an extension. C. then had the note and mortgage assigned in blank and sent to him, and he sold them, after due, to plaintiff, who paid full value therefor, and inserted his name in the blank assignments. J. did not know of this transfer, but supposed that H. still held the securities. At the end of the two years J. paid the amount of the loan to C., who failed to pay it to plaintiff, but absconded. *Held* that plaintiff succeeded to all the rights of H.; that the payment to C. was not a satisfaction of the note and mortgage; and that plaintiff was entitled to foreclose it as against J. and subsequent mortgagees of the land. [Compare *Artley v. Morrison,* 73 Iowa, 132.]

2. **Guardian and Ward:** ASSIGNMENT OF NOTE AFTER WARD'S MAJORITY. An assignment by a guardian, executed after his ward's majority, of a note made to the guardian for money due the ward, is valid, in an action by the assignee to collect the note, in the absence of any objection by the ward.

*Appeal from Clay District Court.*—HON. GEORGE H. CARR, Judge.

FILED, MAY 8, 1889.

ACTION for the foreclosure of a mortgage upon certain real estate. Upon a hearing on the merits there was a decree for the defendants. Plaintiff appeals.

*N. B. Raymond*, for appellant.

*W. S. Bemis* and *Hughes & Chamberlain*, for appellees.

ROTHROCK, J.—I. In the year 1878 the defendant Mary J. Pond was the owner of eighty acres of land in Clay county. She made a loan of two hundred dollars of one S. I. Hillhouse, guardian of Sarah B. Hillhouse, of Hartford, Connecticut. The loan was for five years, and was secured by a mortgage on said land. Afterwards Mary J. Pond sold and conveyed the land to the defendant Jones, who assumed the payment of said mortgage. The loan was originally procured through one Creighton, a loan broker at Des Moines. There is no doubt that Creighton was the agent of Mrs. Pond in effecting the loan. The regular payments of interest on the loan were sent by her and by Jones, after he bought the land, to Creighton, who forwarded the money to Hartford. The note secured by the mortgage fell due on May 1, 1883. Some time prior to that date Jones applied to Creighton to procure for him an extension of the loan for two years. Creighton agreed to procure the extension upon the payment of six dollars for his services. On the twenty-sixth of April, 1883, he wrote to one Abbe, of Hartford, Connecticut, through whom the loan had been negotiated, inquiring whether the desired extension would be granted. Abbe replied that Mrs. Hillhouse was a poor woman, and wanted her money. This letter was

*1. AGENCY: payment of note to absconding agent: whose loss.*

written on the eighth day of May, 1883. On the seventh of the same month, Creighton again wrote to Abbe, inclosing a draft in payment of the note and mortgage, and saying: "We enclose sat. piece for Pond loan." The money was received, and the satisfaction piece was executed, and returned to Creighton. On the seventeenth day of May, 1883, Creighton returned the note and mortgage to Abbe, requesting that he have Mrs. Hillhouse assign them in blank, which she did, and the same were returned to Creighton. It does not appear what became of the satisfaction piece. Jones paid the six dollars commission for the extension of time desired by him. Creighton sold the note and mortgage to the plaintiff, who paid therefor the full amount of the principal and accrued interest. He took the note and mortgage into his possession, and at some time thereafter inserted his name in the blank assignments. Jones continued to send the semi-annual installments of interest to Creighton, who paid the same to the plaintiff, and at the expiration of the two years he paid the full amount of the note and mortgage to Creighton, who absconded without paying the plaintiff any part of the money,

The question to be determined is, should the plaintiff suffer the loss occasioned by Creighton's defalcation, or should the loss fall upon Jones, and the other defendants who are subsequent mortgagees and purchasers of the land? If, when the note and mortgage became due, Jones had, instead of asking for an extension, paid the money to Creighton, and Creighton had failed to pay it to Abbe, the agent of the mortgagee, the loss would have fallen upon Jones. *Artley v. Morrison*, 73 Iowa, 132. Did the facts, in connection with the payment of the mortgage by Creighton, the subsequent sale and assignment to the plaintiff, change the rights of Jones as to whom he was authorized to make payments? It is contended by counsel for appellant that, as the plaintiff held the note and mortgage by a regular assignment, he has the same rights which the mortgagee had. On the other hand, it is claimed by counsel for appellees that

when Creighton paid the mortgage, and received the satisfaction piece, the mortgage was extinguished, and that the assignment conferred no right upon the plaintiff. We do not think this last position can be maintained. Jones did not pay the debt at that time. He was not entitled to a discharge of the debt, and a satisfaction of the mortgage, without payment. At the time Creighton made the payment for him, so far as the evidence shows, it was done by mistake, and in the belief that Jones was ready to pay the debt. Creighton stated in the letter in which he sent the money to Abbe that "Pond wanted an extension, but since decided to pay." It appears that at that time Creighton was a man of affairs. He was extensively engaged as a loan agent or broker. He advanced his own money to pay this loan, and if he did so by mistake, or in the belief that Jones was ready to reimburse him for the advancement, he had the right to correct the mistake by taking an assignment of the note and mortgage. We are of opinion that the assignment to the plaintiff was a valid transaction, and that he was the lawful holder of the note, and of the mortgage given to secure its payment.

The transaction, so far as Creighton's connection with it was involved, amounted to a mere transfer of the note and mortgage from Mrs. Hillhouse to the plaintiff, and his rights as against the maker of the mortgage and subsequent grantees of the land were precisely the same as the rights of Mrs. Hillhouse, unless there were some facts in connection with the assignment to the plaintiff which changed the relations of the partiês. An examination of the evidence satisfies us that in making the transfer and assignment the plaintiff acted in good faith, and in the belief that Creighton was the agent of the mortgagors. The plaintiff testified as a witness that Creighton represented himself to be their agent, and there is no evidence in the record contradictory to this. It is true that Creighton solicited the plaintiff to make the purchase and take the assignment, and promised that he would find another purchaser for the note

and mortgage. But the fact is undisputed that the plaintiff paid for the same in full, and his ownership thereof is and was absolute. It is also a significant fact that none of the defendants in any manner changed their relations to Creighton. They at all times supposed that the mortgage was still held by Mrs. Hillhouse. In view of all these facts and circumstances there is no difference in principle between this case and that of *Artley v. Morrison*, above cited.

II. A question is made as to the validity of the assignment of the note and mortgage made by Mrs.

<span style="font-variant: small-caps">2. Guardian and ward: assignment of note after ward's majority.</span>

Hillhouse. It appears that at that time her ward, Sarah B. Hillhouse, was of full age, and it is claimed by counsel that the right of the guardian to act as such had ceased. But, in the absence of any objection from the ward, the collection of her money by the person to whom it was payable cannot be called in question by third persons. The note was made payable to S. I. Hillhouse, and her assignment must in this proceeding be regarded as valid. Our conclusion is that the district court should have entered a decree for the plaintiff as prayed.

Reversed.