GRIFFIN vs. CARVILL, MISC 17-000692

































 
 LYNDA MARIE GRIFFIN, Plaintiff, v. CHRISTIAN CARVILL, FEDERAL NATIONAL MORTGAGE ASSOCIATION, and OCWEN, LLC, Defendants
 MISC 17-000692 
 JULY 6, 2021
BARNSTABLE, ss.
VHAY, J.
DECISION














 Plaintiff Lynda Marie ("Lydia") Griffin claims she's the owner of a property at 841 Santuit-Newtown Road in Marstons Mills, Massachusetts (the "Property"), where she lives. The Property is registered land. 





 The current certificate of title for the Property names defendant Christian Carvill as the Property's owner. In September 2020, he moved for summary judgment on Ms. Griffin's claims in this case. Griffin declined to file an opposition. After the Court's initial review of Carvill's motion and a further Court order, Carvill amended his Land Court Rule 4 Statement of Facts and his Rule 4 Appendix in support of his motion. [Note 1] Griffin did not respond to those filings. 





 On May 26, 2021, in lieu of holding an oral argument and without objection from the parties, this Court issued a tentative decision on Mr. Carvill's motion for summary judgment. (An October 31, 2020 order of the Court explains why the Court hasn't heard oral argument, as an accommodation to Ms. Griffin.) The Court indicated it would grant Carvill's motion. Nevertheless, in order to give the parties an opportunity similar to that enjoyed by parties who are allowed oral argument on yet-to-be-decided motions (and as promised in the October 2020 order), the Court directed the parties to file by June 25, 2021, in writing, any objections to the tentative decision. (The October 2020 order assured the parties that the Court would not deem any party's failure to file an objection as a waiver of any argument that party presented prior to issuance of the tentative decision.) 





 Neither party has filed anything that she or he has labelled an objection to the tentative decision. Nevertheless, on June 21, 2021, Ms. Griffin filed what she styled as a notice of appeal. The Court has reviewed the notice. While it states that Griffin is appealing the tentative decision, it doesn't specify any objections to that decision. The notice thus has not caused the Court to reconsider its tentative conclusions on Mr. Carvill's motion, which the Court now GRANTS. Judgment will enter accordingly. 





 The Court begins its analysis of Mr. Carvill's motion by reviewing Ms. Griffin's claims. In December 2017, John V. LaMagna, claiming to be the executor of John W. Tesiny, and acting on behalf of Tesiny's estate and "other parties in interest," filed suit in this Court. He named as defendants Ocwen LLC, Federal National Mortgage Association ("FNMA"), and "Other parties to be added pending Discovery." Complaint, 1 (Dec. 17, 2017). LaMagna characterized the dispute as one over title. At one point his Complaint called the action one to "Try Title." Id. at 4.





 Mr. LaMagna alleged that Ocwen and FNMA had improperly foreclosed on the Property. [Note 2] LaMagna later disclosed that he and others lived at the Property. LaMagna wished to see title to the Property restored to the "family." Id. at 5. 





 Mr. LaMagna served Ocwen and FNMA with a summons and complaint. Neither defendant appeared, and the Court defaulted both. At that point, the Court examined more closely LaMagna's standing to pursue his claims. That's because LaMagna isn't an attorney, nor had he claimed to be the sole beneficiary of Mr. Tesiny's estate. Personal representatives of an estate who are neither attorneys nor sole beneficiaries of the estate generally aren't allowed to represent an estate in litigation. See Wilbur v. Tunnell, 98 Mass. App. Ct. 19 , 24 (2020). 





 The Court's questions led to a September 2018 hearing. During that hearing, Mr. LaMagna said that he and his life partner, Ms. Griffin, occupied the Property. LaMagna claimed that Griffin inherited the Property under Mr. Tesiny's will (the "Will"), and that she continued to be the Property's owner notwithstanding the alleged foreclosure. LaMagna also disclosed that after the alleged foreclosure, FNMA had sold the Property to Mr. Carvill. 





 Mr. LaMagna's disclosures prompted the Court to review the electronic records of the Barnstable County Registry of Deeds and the Barnstable Registry District of the Land Court (the "Registry District"). According to those records, the Property is registered land. Those records also show that the Registry District had issued in February 2018 its Certificate of Title No. 215471, naming Carvill as the Property's owner. 





 By order dated September 14, 2018, the Court informed Mr. LaMagna that he couldn't represent Ms. Griffin's interests. Two weeks later, Griffin (representing herself) moved to substitute herself as the plaintiff in this case. She also moved to amend her complaint to add Mr. Carvill as a defendant. The Court granted both motions. 





 In November 2018, Mr. Carvill appeared in this case and moved to dismiss the December 2017 complaint. Carvill characterized Griffin's case as a "try title" action. He argued that a plaintiff in such an action must "allege three jurisdictional elements . . . : (1) record title, (2) possession, and (3) an actual or possible adverse claim." Memorandum of Law Supporting Defendant Christian Carvill's . . . Motion to Dismiss the Complaint, 8 (Nov. 14, 2018), quoting Abate v. Fremont Investment & Loan, 470 Mass. 821 , 830 (2015). Carvill contended that LaMagna/Griffin's complaint didn't allege any of the Abate elements. 





 The Court granted Mr. Carvill's motion to dismiss, but also gave Ms. Griffin leave to amend her complaint and supply any missing facts. At that point, Griffin (who is disabled) sought various accommodations. She also asked what an "amended complaint" must contain. After reviewing her requests for accommodations, the Court permitted Griffin to supply additional facts and allegations against Carvill by answering written questions posed by the Court. The Court has treated Griffin's answers to those questions (filed February 7, 2019) and a supplement she filed seeking additional relief (docketed the same day) as her amended complaint, and so when this Decision refers to the "amended complaint," it means the things Griffin filed on February 7, 2019. 





 In her amended complaint, Ms. Griffin claims she has resided at the Property since 2009. She alleges she obtained title to the Property via the Will. She filed with her amended complaint a copy of the Will, dated December 26, 2011. The Will reads in part (capitalization and emphasis in original):





 6. CLAUSE SIXTH: Designation and Naming of My Heir and Beneficiary 





 I, John Walton Tesiny, name as heir (subject to conditions enumerated below) Lynda Marie Griffin generally known as "Lydia" who reside[s] at 841 Santuit Newtown Rd Marstons Mills, Ma 02648 in the County of Barnstable where I also reside. 





 I, John Walton Tesiny, individually and as Trustee of The Tesiny Family Trust, do hereby give and bequest the house and property at 841 Santuit-Newtown Rd Marstons Mills, MA 02648 in the County of Barnstable to Lynda Marie Griffin (Subject to conditions enumerated below). 





 . . . 





 No one for any reason who claims to be an heir or devisee has any right to ask my named heir . . . to move out of my property after my death unless and until[] there is a probate case and the probate court judge decides they have the right to ask [her] to move out. 





Clause Seventh of the Will gave members of Tesiny's family one year in which to "file a probate action" to challenge the Will; "[a]fter that Lydia is irrevocably my heir and my property, my house and my land are irrevocably her house and her property." Clause Ninth of the Will declares that the laws of the Commonwealth of Massachusetts are to govern all questions concerning the validity or construction of the Will. 





 Ms. Griffin alleges that FNMA and its successor in interest, Mr. Carvill, have made claims to the Property that are adverse to her claim of ownership. See Amended Complaint, answers 4-6. She seeks declarations that Ocwen/FNMA's foreclosure on the Property is void and that she owns the Property outright (or that she and "Mr. Tesiny's Estate" own the Property). Id., answer 6 and page 10. She wants a "Final Judgment Quieting Title." Id. at 11. She also seeks damages from Carvill. See id. at 9-10. 





 The Court now turns to the facts that are material to Mr. Carvill's motion for summary judgment. Land Court Rule 4 requires a party who moves for summary judgment to present "by a concise statement, in consecutive numbered paragraphs, of the material facts upon which the moving party relies, with page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits." Carvill's Statement of Facts presents what he claims are the undisputed facts, each separately numbered. 





 Because Mr. Carvill submitted a Statement of Facts, Land Court Rule 4 imposes reciprocal obligations on Ms. Griffin: 





 Each opposition to a motion under Rule[] 56 shall include: (1) a response, using the same paragraph numbers, to the moving party's statement of facts, and (2) in consecutive numbered paragraphs, a concise statement of any additional material facts which the opposing party deems relevant and necessary to the motion. Any response other than "admitted" to a statement of fact made by the moving party, and any statement of additional material fact, must include page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits, or else the facts described by the moving party as undisputed shall be deemed to have been admitted. 





Rule 4 also requires a party who opposes a motion for summary judgment to file with her opposition "an appendix, appropriately indexed, composed of . . . all cited portions of the documents or other materials referenced in [the opposing party's] statement[ of facts]," unless the opposing party is relying on materials "contained in the moving party's appendix . . . . The court need not look in the record or take judicial notice beyond the materials brought to its attention by the parties." 





 The Court advised Ms. Griffin of Land Court Rule 4 twice before a November 2020 deadline for opposing Mr. Carvill's motion for summary judgment. [Note 3] Griffin has filed many things following the docketing of Carvill's motion, but none of them contains a paragraph-by paragraph response to the Statement of Facts. Rule 4 sets forth the consequences of Griffin's not responding to the Statement of Facts: the Court must deem each allegation in the Statement of Facts as "admitted" if Carvill has supported them with admissible evidence, via either his Appendix or his supplemental appendix. Thus, with certain exceptions noted below, the Court deems the Statement of Facts as admitted. 





 Here's what the Statement of Facts shows with respect to the facts that are material to this Decision. The Court has arranged the facts in chronological order, while keeping the Statement's paragraph numbers (or those of Mr. Carvill's May 7, 2021 supplement to his Statement, noted with an "S" below). The Court has omitted non-material facts. 





 2. Mr. Tesiny took title to the Property in March 2006. His transfer Certificate of Title is No. 179659, from the Registry District. 





 3. In March 2007, Mr. Tesiny granted Mortgage Electronic Registration Systems, Inc., as nominee for American Mortgage Network, Inc., a mortgage on the Property (the "Mortgage"). The Mortgage secured a $130,000 loan to Tesiny. The Registry District accepted the Mortgage for registration on March 30, 2007, as Document No. 1,059,952. (The Court takes the foregoing facts from Document No. 1,059,952. The Court also takes judicial notice that the Registry District noted the Mortgage on Certificate of Title No. 179659. [Note 4]) 





 4. Registry District Document No. 1,060,986 shows that on April 6, 2007, Mr. Tesiny executed a deed (the "2007 Deed") conveying to himself and Michael Tobey, as Trustees of the Tesiny Family Trust under declaration of trust dated February 13, 2007 (the "Trust"), a 66.67% interest in the Property, as tenants in common. 





 The Court takes judicial notice that, following the registration of the 2007 Deed, the Registry District cancelled Certificate of Title No. 179659 and issued Certificate of Title No. 182798, naming Trustees Tesiny and Tobey as the holders of an undivided 2/3ds interest in the Property, and Mr. Tesiny individually as the holder of an undivided 1/3d interest in the Property, as tenants in common. See April 2019 Order (advising parties of Court's intent to take judicial notice of Certificate of Title No. 182798). The Court takes judicial notice that the Registry District listed the Mortgage on the memorandum of encumbrances for Certificate of Title No. 182798. 





 5. The Statement of Facts asserts that the Trust "was not recorded." The Statement provides no reference to the Appendix for this asserted fact. The Court takes judicial notice, however, that the memorandum of encumbrances for Certificate of Title No. 182798 does not list the declaration of trust for the Trust. The memorandum does show (and the Court takes judicial notice) that in conjunction with Mr. Tesiny's conveyance to the Trust of a 2/3ds interest in the Property, Trustees Tesiny and Tobey submitted for registration a trustee's certificate pursuant to G.L. c. 184, § 35. The Registry District registered the certificate as Document No. 1,060,985 on April 11, 2007. 





 1. Ms. Griffin began occupying the Property in 2009. 





 9. Mr. Tesiny died on December 30, 2011. 





 The Statement of Facts further asserts that Tesiny's death certificate never made its way into the "chain of title" for the Property. But Mr. Carvill acknowledges in paragraph 9 of his Statement of Facts that someone submitted to the Registry District the death certificate: the District accepted it for registration on November 28, 2012, as Document No. 1,207,407. The death certificate is noted on the memorandum of encumbrances for Certificate of Title No. 182798. There's thus no support for the assertion that Tesiny's death certificate isn't in the Property's chain of title. The Court will disregard that assertion in deciding Carvill's motion for summary judgment. 





 Paragraph 9 of the Statement of Facts contains another assertion that lacks support in the Appendix: "[t]here is no probate of any estate of Mr. Tesiny. . . ." It's true that the memorandum of encumbrances for Certificate of Title No. 182798 contains no reference to anything submitted for registration that one could describe as evidence of efforts to probate Tesiny's estate. But the absence on a certificate of title of a reference to probate activities falls short of being proof, as an undisputed fact, that probate never occurred. [Note 5] Moreover, in considering a motion for summary judgment, a court may not draw factual inferences in favor of the moving party (here, Mr. Carvill). The law's the opposite. See Attorney Gen. v. Bailey, 386 Mass. 367 , 371 (1982). 





 6. On July 2, 2015, Ocwen Loan Servicing, LLC ("OLS"), alleging to be the then holder of the Mortgage, gave FNMA a foreclosure deed for the Property (the "Foreclosure Deed"). The Registry District registered the Foreclosure Deed on August 17, 2015, as Document No. 1,276,139. The Foreclosure Deed is noted on Certificate of Title No. 182798. The same day the District registered the Foreclosure Deed, the District issued Certificate of Title No. 207130 in the name of FNMA. See April 2019 Order (advising parties of Court's intent to take judicial notice of Certificate of Title No. 207130). The Foreclosure Deed asserts that OLS had the power to sell the Property to FNMA "by the power conferred by [the Mortgage]." 





 S.1. In January 2018, Mr. Carvill was interested in buying the Property. He requested and obtained a title examination. 





 10. Paragraph 10 of the Statement of Facts alleges that the name Lydia Griffin "appears nowhere in the chain of title or record for the property at the Barnstable County Registry of the Land Court." The Statement provides no references to the Appendix that support this allegation. The Court nevertheless takes judicial notice that Certificates of Title Nos. 179659, 182798, 207130, and 215471 do not identify Griffin as owning an interest in the Property. 





 S.6. The title examination Mr. Carvill received showed no claim made or interest held by Ms. Griffin in the Property. 





 8. On February 6, 2018, FNMA conveyed to Mr. Carvill the Property, by quitclaim deed. The Registry District issued its Certificate of Title No. 215471, naming Carvill as the Property's owner, on February 23, 2018. See April 2019 Order (advising parties of Court's intent to take judicial notice of Certificate of Title No. 215471). 





 S.4. Mr. Carvill paid $194,307.75 for the Property. 





 S.5. Prior to purchasing the Property, Mr. Carvill was unaware of any third-party claims to the Property. 





 The Court now turns to Mr. Carvill's principal arguments for why he deserves summary judgment. Ms. Griffin's amended complaint attempts to present two claims: one to "try title," an action that G.L. c. 240, §§ 1-5, governs; and one to "quiet title," a claim that id. at §§ 6-10 controls. [Note 6] The Court must enter summary judgment as to Griffin's try-title claim because Carvill has shown, "by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials," that Griffin "has no reasonable expectation of proving an essential element" of a try-title case, that she has record title to the Property. Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 716 (1991). The Court also must enter summary judgment as to both of Griffin's claims because she has no reasonable expectation of proving that Carvill is not a bona-fide purchaser of the Property. 





 Griffin's Try-Title Claim. Chapter 240, § 1 provides in pertinent part: 





 If the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land claiming an estate of freehold therein . . . may file a petition in the land court stating his interest, describing the land, the claims and the possible adverse claimants so far as known to him, and praying that such claimants may be summoned to show cause why they should not bring an action to try such claim. 





Bevilacqua v. Rodriquez, 460 Mass. 762 , 766 (2011), elaborates: 





 There are thus two steps to a try title action: the first, which requires the plaintiff to establish jurisdictional facts such that the adverse claimant might be 'summoned to show cause why he should not bring an action to try his claim,' and the second, which requires the adverse claimant either to disclaim the relevant interest in the property or to bring an action to assert the claim in question. 





Id., quoting c. 240, § 1. If the plaintiff can't meet those requirements, the Land Court "is without subject matter jurisdiction and the [try-title claim] must be dismissed." Bevilacqua, 460 Mass. at 766. 





 At the time Mr. LaMagna filed this case, Ms. Griffin was "in possession" of the Property, as it's undisputed she's resided there since 2009. See id. at 767 (court may infer from plaintiff's residing on a property that he or she is "in possession" of it); see also Carvill's Memorandum at 9 (conceding the Griffin "is in possession of the property"). Griffin's try-title claim fails, however, with respect to the second jurisdictional requirement: that she have "record title" to the Property. "Record title" means title that one can ascertain, from the records of the registries of deeds, the registries of probate, or those of the Land Court, as being "effective[]." Bevilacqua, 460 Mass. at 771. See also Arnold v. Reed, 162 Mass. 438 , 440 (1894) (same effect). 





 Ms. Griffin hasn't pleaded that she has record title. Nor could she, truthfully: it's undisputed that none of the certificates of title for the Property, from the time Mr. Tesiny bought the Property through Mr. Carvill's purported acquisition of it, names Griffin as an owner. She thus cannot prove she had, within the meaning of c. 240, § 1, "record title" to the Property at the time this suit was filed. See Michaelson v. Silver Beach Improvement Ass'n, 342 Mass. 251 , 260 (1961), quoting c. 185, § 54 (original and transfer certificates of title are "conclusive as to all matters contained therein, except as otherwise provided in [c. 185]"). The Court thus GRANTS Carvill's motion for summary judgment as to Griffin's try-title claim. See Ng Bros. Constr. v. Cranney, 436 Mass. 638 , 643-644 (2002) (summary judgment should be granted "where there are no issues of genuine material fact" in a case, "and the moving party is entitled to judgment as a matter of law"). [Note 7] 





 Griffin's Quiet-Title Claim. A plaintiff may bring an action under c. 240, § 6, to quiet her title to land only if she has "actual possession" of the land and "legal" or "sufficient" title to it. See MacNeil Bros. Co. v. State Realty Co. of Boston, 333 Mass. 770 (1956) (rescript); U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 , 645 (2011). There are several differences between try-title and quiet-title actions (see Bevilacqua, 460 Mass. at 767 n. 5), but a key one is this: a plaintiff in a quiet-title action need not allege that she has "record title." A "claim of rightful legal ownership" suffices. McCartin Leisure Industries, Inc. v. Baker, 376 Mass. 62 , 65 (1978); see also Abate, 470 Mass. at 832 n. 22 ("A petitioner may hold record title without having good title or may have good title without record title."). 





 As noted earlier, Ms. Griffin has actual possession of the Property. She rests her claim to "legal ownership" of the Property on the Tesiny Will, a will Mr. Carvill hasn't challenged on summary judgment. Under Massachusetts law, title to real property bequeathed under a will passes to the decedent's devisees at the time of death. See G.L. c. 190B, § 3-101 ("Upon the death of a person, the decedent's real and personal property devolves to the persons to whom it is devised by the decedent's last will. . . ."). The law on devises doesn't change when a person bequeaths registered land. See Federal Nat. Bank v. Gaston, 256 Mass. 471 , 477-478 (1926) ("We do not think the Legislature [in adopting the land registration act] contemplated that there should be any difference between registered and unregistered land in regard to . . . the rights of [the owner's] heirs or devisees."); c. 185, § 57 ("An owner of registered land may convey, mortgage, lease, charge or otherwise deal with it as fully as if it had not been registered. . . . But no deed, mortgage, or other voluntary instrument, except a will . . . , purporting to convey or affect registered land, shall take effect as a conveyance or bind the land, but shall operate only as a contract between the parties. . . ."). 





 Ms. Griffin's quiet-title claim thus does not suffer from the defect that's fatal to her try title claim, the inability to point to a document of record that shows she has title. Mr. Carvill also hasn't contended that registered land, like the Property here, can't be the subject of a quiet title action. According to G.L. c. 240, § 10, quiet-title actions are "a proceeding in rem against the land, and a judgment establishing or declaring the validity, nature or extent of the plaintiff's title may be entered, and shall operate directly on the land. . . ." One could argue that, having created the land registration system - a system whose very purpose "is to bind the land and to quiet title to it," Malaguti v. Rosen, 262 Mass. 555 , 567-568 (1928) - the Legislature had no need (or intent) to create a second way, via c. 240, §§ 6-10, of quieting title to registered land. See also c. 185, § 54 (a certificate of title to registered land is "conclusive as to all matters contained therein, except as otherwise provided in [c. 185]"); Feinzig v. Ficksman, 42 Mass. App. Ct. 113 , 116 (1997) (the purpose of the land registration system "is to provide a method for making titles to land certain, indefeasible, and readily ascertainable"). But Carvill hasn't raised that argument, and so for purposes of his motion for summary judgment, the Court will assume that a person who allegedly owns registered land as the result of a devise in a will may bring a quiet-title action under c. 240, §§ 6-10. 





 That said, Mr. Carvill has raised, and has properly supported, a single defense that is fatal to both of Ms. Griffin's title claims: that he's a bona-fide purchaser of the Property. See c. 185, § 46 ("[E]very subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate . . . ."). In an action to recover personal property, a person who holds the property, and who claims he or she may keep it because he or she bought it in good faith, with no knowledge of competing claims to the property, has the burden of proving his or her good-faith status. See, for example, Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501 , 548 (1997) (discussing burden of proof under art. 8 of the Uniform Commercial Code, G.L. c. 106, § 8-302(1)). The rule's different when it comes to unrecorded instruments that pertain to title to real estate, including unrecorded or unprobated wills. A devisee under a will that doesn't appear in either the registry of deeds or the registry of probtate, who claims to enjoy title to real estate that's better than the title of the property's owner of record (that is, if that owner bought the property in question), bears the burden of disproving the purchaser's good faith. See Richardson v. Lee Realty Corp., 364 Mass. 632 , 634 (1974). The same rule applies to registered land. See, for example, Jackson v. Knott, 418 Mass. 704 , 710-711 (1994) (challenger bears the burden of proving the applicability of the two exceptions to c. 185, § 46, that at the time of purchase "(1) . . . there were facts described on [the purchaser's] certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) . . . the purchaser has actual knowledge of a prior unregistered interest"). 





 Ms. Griffin thus bears the burden on summary judgment of providing evidence that Mr. Carvill is not a bona-fide purchaser of the Property. She hasn't done so. She hasn't offered anything that challenges Carvill's proof that he paid $194,307.75 for the Property. She also hasn't disputed Carvill's testimony by affidavit that, prior to buying the Property, he had no knowledge of Griffin's claims to it. The Court thus must GRANT Carvill summary judgment on Griffin's quiet-title claims, plus her ancillary claims for declaratory relief. [Note 8] Judgment to enter accordingly. 





FOOTNOTES
[Note 1] Pages 3-6 of Carvill's Memorandum Supporting the Motion for Summary Judgment (the "Carvill Memorandum") set forth his original Rule 4 Statement of Facts. He filed with his Memorandum a Rule 4 Appendix (the "Appendix"). He supplemented both the Statement (as supplemented, the "Statement of Facts") and the Appendix (the "Supplemental Appendix") on May 7, 2021. 

[Note 2] As will be seen below, neither Ocwen LLC nor FNMA foreclosed on the Property: Ocwen Loan Services, LLC ("OLS") did. 

[Note 3] See Order (Aug. 10, 2020) (setting deadline for filing opposition to Carvill's motion; "any opposition to the motion MUST comply with Land Court Rule 4") (capitalization in original order); Order on Certain Pending Motions, 6-7 (Oct. 30, 2020) (noting that Griffin had yet to oppose Carvill's motion in the manner Rule 4 requires); id. at 8-9 (ordering Griffin to file her opposition by November 13, 2020, "in the manner that Rule 56 and Land Court Rule 4 require"). 

[Note 4] See Jarosz v. Palmer, 436 Mass. 526 , 530 (2002) (court may take judicial notice of court's records in a related action, with appropriate advance notice to the parties); Mass. Guide to Evidence § 201(b)(2) (same). The Court advised the parties by order dated April 2, 2019 (the "April 2019 Order") that the Court intended to take judicial notice of several certificates of title pertaining to the Property, including Certificate of Title No. 179659. 

[Note 5] The Massachusetts Uniform Probate Code ("MUPC") became effective on March 31, 2012, after Mr. Tesiny's death. See St. 2011, c. 224. The 2008 Act Relative to the Uniform Probate Code makes the deadlines under the pre-MUPC probate code applicable to any will Tesiny left. See St. 2008, c. 521, § 43 ("[T]his act shall apply to pre-existing governing instruments, except that it shall not apply to governing instruments which became irrevocable prior to the effective date of this act. . . ."). Under the pre-MUPC probate code, a personal representative had 50 years from the date of death to enter a will for probate administration. See former G.L. c. 193, § 4. 

[Note 6] Griffin raises other claims besides these. She asserts, for example, that FNMA didn't give her notice (as the person who paid the Property's water bills) of its alleged foreclosure on the Property, in violation of G.L. c. 244, § 15A. That may be true, but FNMA's alleged failure to give a § 15A notice won't undo Mr. Carvill's title. See Flores v. One West Bank, F.S.B., 886 F.3d 160, 164 (1st Cir. 2018) (construing § 15A). Griffin also seeks several declarations relating to her alleged ownership of the Property. Her entitlement to each declaration depends, however, on her prevailing on one or both of her c. 240 claims. 

[Note 7] Since Griffin hasn't shown she has record title to the Property, the Court further DISMISSES her try-title claims against defaulted defendants Ocwen and FNMA. 

[Note 8] Since (a) Certificate of Title No. 215471 names Carvill as the Property's registered owner, and (b) Griffin hasn't defeated Carvill's claim on summary judgment to title to the Property, the Court DISMISSES as moot Griffin's quiet-title claims against defaulted defendants Ocwen and FNMA. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.